IN RE GUARDIANSHIP OF REBECCA B. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
REBECCA B. ET AL., APPELLEES, V. SANDRA B., APPELLANT.
IN RE INTEREST OF REBECCA B. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. SANDRA B., APPELLANT.
621 N.W. 2d 289

Filed December 22, 2000.   Nos. S-99-1262 through S-99-1265.

Michael E. Piccolo, of Clough, Dawson, Piccolo & Jones, for appellant.

Patrick B. Hays, guardian ad litem for appellees Rebecca B. et al.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Connolly, J.

These consolidated appeals by Sandra B. arise from the Lincoln County Court's decisions in four separate cases involving her three children: Rebecca B., Elizabeth B., and Jessica B.

Case No. S-99-1265 is an appeal from a review hearing wherein the county court, sitting as a juvenile court, adopted the Department of Health and Human Services' (DHHS) case plan that recommended all three children be placed with their maternal grandparents. The plan also recommended that the maternal grandparents have permanent guardianship and that Sandra have

reasonable visitation with the children. In this case, we dismiss the appeal because the September 24, 1999, review order merely continued or extended the terms of the November 18, 1998, disposition order and, thus, did not affect a substantial right and was not a final, appealable order.

Cases Nos. S-99-1262, S-99-1263, and S-99-1264 are appeals from the county court's orders appointing the grandparents as coguardians for each child under Neb. Rev. Stat. § 30-2608 (Cum. Supp. 2000). In these cases, we vacate the county court's orders granting guardianship under § 30-2608 because the juvenile court had already assumed jurisdiction, and we dismiss the appeals.

## BACKGROUND

In March 1998, at the initiation of the grandparents, the State filed a petition in Lincoln County Court, alleging that Rebecca, born January 12, 1983; Elizabeth, born May 15, 1985; and Jessica, born February 5, 1988, were minors within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 1997). At an April hearing, the children were placed in the temporary custody of the grandparents, and an adjudication hearing was set for June.

### ADJUDICATION HEARING

At the adjudication hearing, evidence was adduced showing that Sandra and James B. were divorced in 1993 and that James was not permitted visitation because of his convictions for sexual abuse of the children. The marriage was marked by James' physical abuse of Sandra as well. After separating from James in 1990 when she discovered the sexual abuse, Sandra was hospitalized at what was then the Richard H. Young Memorial Hospital in Kearney, Nebraska, for depression and suicidal thoughts. Upon release, she began counseling with Lynda Perry, a mental health practitioner, until 1993.

The record reflects that sometime in 1993, Sandra locked herself in a bedroom with a gun while her children were present in the home. She called Perry for help and was admitted to the hospital. She was diagnosed with major depression and a personality disorder, which Perry stated was difficult, if not impossible, to treat. The hospital assessment also found Sandra was a suicidal and a homicidal risk at that time, and Sandra told Perry she felt she had the potential to harm her children.

In 1995, Sandra began counseling with Karen L. Mueller. Mueller testified that Sandra's mental health issues and parenting skills had improved. Mueller stated she was not concerned for the safety of Sandra's children because Sandra had always asked for help with her depression when needed and had never formed any actual homicidal plans. Mueller admitted, however, that on three separate occasions in October 1995, March 1996, and February 1997, she had hospitalized Sandra when she was concerned for Sandra's safety or for the safety of the children. She admitted that Sandra had stated in March 1996 that she had experienced thoughts of killing her daughters as well as herself and that in 1997, Sandra had made specific plans for killing herself.

In 1996, Sandra voluntarily asked for help from DHHS, and she was provided in-home family support therapy and services until 1997. These service providers testified that they never saw or heard of a reason to refer the family to DHHS. DHHS had knowledge of Sandra's disability due to mental illnesses and her hospitalizations, but did not recommend out-of-home placement for the children.

Other evidence showed that Sandra's depression had affected her ability to parent. Perry testified that Sandra would frequently report her concerns about her children's behavior and that after a while, Perry came to the conclusion Sandra was determined to keep her children traumatized by exaggerating their problems. There was also testimony by Sandra's sister that Sandra was determined to find mental health professionals who would place Rebecca and Jessica into long-term-care facilities. Rebecca and Jessica were hospitalized in 1998, but mental health professionals testified that they had recommended the placements. Two of those recommendations, concerning Jessica, were based on a belief that Sandra was not capable of emotionally or physically providing a safe and structured environment for Jessica to deal with her problems. One counselor also recommended out-of-home placements for Rebecca in 1995 and 1996 because of disruptions she was causing at home.

Sandra had also allegedly stated she thought she could get Rebecca into the Youth Rehabilitation and Treatment Center in Geneva, Nebraska, by making Rebecca angry enough to hit Sandra and then calling the sheriff. Sandra's mother testified

that Jessica had stated she did not wish to return home because no one took care of them and they had to get their own food because Sandra was always in her room.

The county court determined that each child was within the definition of § 43-247(3)(a) and placed the children in the temporary custody of DHHS, with physical placement to continue with the grandparents. The court also ordered DHHS to prepare a case plan for a disposition hearing in November.

## DISPOSITION HEARING

At the disposition hearing on November 18, 1998, the State offered evidence of the family evaluation performed by Karen Sharer-Mohatt, a clinical psychologist. The report suggested that either a type of maltreatment referred to as "Factitious Disorder by Proxy" (FDP) or a type referred to as "Munchausen by Proxy" (MBP), wherein the perpetrator deliberately induces or exaggerates a physical or psychological problem in the victim for personal gratification, may have been a factor in Sandra's relationships with Rebecca and Jessica. Sandra asked for an evidentiary hearing on this issue, which the court said would be granted.

The court then adopted the first case plan calling for guardianship with the grandparents by May 1999, with reasonable visitation, but no reunification goal for Sandra. In its disposition order, the court found that reasonable efforts had been made to eliminate the need for removal from the parental home and that it was not in the best interests of the children to return home. The court placed the children in the custody of DHHS. On June 18, Sandra filed a motion for an evidentiary hearing to contest the FDP or MBP suggestion in Sharer-Mohatt's report. On June 30, the guardian ad litem petitioned the county court under § 30-2608 to appoint the children's grandparents as coguardians on the ground that Sandra's parental rights to custody had been terminated or suspended.

## REVIEW HEARING

At the requested review hearing on September 24, 1999, Sharer-Mohatt testified that she felt the State's case plan should have set out a plan for confirming or ruling out the FDP or MBP maltreatment and if the FDP or MBP were ruled out, to set

reunification goals. She was also concerned that the children and grandparents were not receiving counseling, a condition for her acquiescence in the State's recommendation that the children be placed with the grandparents. Sandra's expert on MBP, Louisa J. Lasher, testified that she found no behavior pattern that would indicate MBP.

Sandra attempted to elicit evidence from the DHHS caseworker demonstrating that DHHS had known of Sandra's mental health history in January 1998, yet had found allegations of abuse and neglect to be unfounded. The court specifically overruled this line of questioning as irrelevant because Sandra had not appealed from the June 1998 adjudication determination. The caseworker stated reunification had not been attempted because of Sandra's past mental illnesses and the children's desire not to return to Sandra's home.

The court found that even ruling out FDP or MBP, Sandra had persistent mental disorders. The court also found that reasonable efforts had been made to prevent removal from the parental home and approved the second case plan, which was essentially identical to the first case plan, with the exception of extending the time goal for the grandparents' becoming coguardians to August 1999.

### GUARDIANSHIP HEARING UNDER § 30-2608

Four days later, a guardianship proceeding was held in the county court with the same judge who presided over the juvenile proceeding. At that hearing, the court took judicial notice of the entire juvenile file. However, transcriptions of the prior hearings were not offered at that time, nor did the judge specify what facts he was judicially noticing. The parties simply agreed that the transcriptions would be marked as exhibits after the hearing. Sandra asked the court to take the matter under advisement until all the evidence was received but did not object to the judicially noticed material. The record does not indicate if the transcripts were received into evidence.

Sandra, the caseworker, and the grandmother were the only witnesses to testify at the guardianship hearing. The caseworker testified as to DHHS' knowledge of Sandra's mental health history and hospitalizations before January 1998, when DHHS

concluded that charges of abuse and neglect were unfounded. The caseworker admitted that the possibility of the FDP or MBP maltreatment was a concern to DHHS but that no steps had been taken to confirm the possibility. She also admitted that Sharer-Mohatt had not recommended guardianship and that reunification was not attempted in this case.

Sandra testified that she had not been hospitalized in the last 3 years and had continued in therapy. She stated she had been allowed to visit her children for only 4 to 6 hours a week; that she had not seen her children on holidays, birthdays, or days off from school; and that the grandparents had been uncooperative about telephone visits.

The grandmother testified that the children were doing well in their home and at school, that DHHS had approved the discontinuation of therapy for the children, and that she and the grandfather intended to fully cooperate with Sandra's visitations. She also stated that Rebecca did not often wish to visit with Sandra.

The court, relying on Sharer-Mohatt's report, concluded that Sandra was not capable of parenting and probably never would be. The court then appointed the grandparents as coguardians for each child. Supervised visitation was set at reasonable times for Rebecca and at least 6 hours per week for Elizabeth. A similar order was entered regarding Jessica. In its order, the court found Sandra's parental right to custody had been suspended by circumstances or prior court order and that it was in the children's best interests to have coguardians appointed.

## ASSIGNMENTS OF ERROR

### JUVENILE CASE PROCEEDINGS

On appeal, Sandra assigns the following errors to the county court, sitting as a juvenile court, in case No. S-99-1265: The court erred in (1) approving and adopting the case plan and court report submitted at the review hearing on September 24, 1999; (2) not ordering that a plan of reunification should be adopted and implemented; (3) approving the placement of the minor children with the grandparents, contrary to evidence adduced at the review hearing; and (4) limiting and restricting Sandra's visitation with one or all of the minor children.

GUARDIANSHIP PROCEEDINGS UNDER § 30-2608

Sandra also assigns the following errors to the guardianship proceedings, cases Nos. S-99-1262, S-99-1263, and S-99-1264: The county court erred in (1) approving and appointing the grandparents to be coguardians of the children, (2) placing the children with the grandparents contrary to the evidence adduced at the hearing, (3) restricting and limiting Sandra's visitation, and (4) approving the guardianship when the juvenile proceeding was still pending and active.

## STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the decision made by the lower courts. *In re Interest of Clifford M. et al.,* 258 Neb. 800, 606 N.W.2d 743 (2000); *In re Interest of Sarah K.,* 258 Neb. 52, 601 N.W.2d 780 (1999).

## ANALYSIS

JUVENILE CASE PROCEEDINGS, CASE NO. S-99-1265

The State argues that this court lacks appellate jurisdiction because the September 24, 1999, disposition order merely continued a previous determination and is, therefore, nonappealable.

Before we address Sandra's assigned errors, we first consider the issue of whether this court has jurisdiction to hear the appeal. *In re Interest of Clifford M. et al., supra*; *Breeden v. Nebraska Methodist Hosp.,* 257 Neb. 371, 598 N.W.2d 441 (1999).

A proceeding before a juvenile court is a special proceeding for appellate purposes. *In re Interest of Clifford M. et al., supra*; *In re Interest of Sarah K., supra.* To be appealable, an order in a special proceeding must affect a substantial right. *In re Interest of Clifford M. et al., supra*; *In re Interest of Sarah K., supra.*

It is well settled that a judicial determination made following an adjudication in a special proceeding which affects the substantial rights of parents to raise their children is a final, appealable order. *In re Interest of Clifford M. et al., supra*; *In re Interest of Sarah K., supra*; *In re Interest of Tabatha R.,* 255

Neb. 818, 587 N.W.2d 109 (1998). However, in juvenile cases, where an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed. *In re Interest of Sarah K., supra; In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). Accordingly, to determine whether the review order can be appealed in this case, it is necessary to consider the nature of the court's order on September 24, 1999, and what parental rights, if any, were affected by that order.

At the disposition hearing on November 18, 1998, Sandra objected to the court's receipt of the case plan and court report on the ground that there was no opportunity to cross-examine Sharer-Mohatt, the psychologist who had performed the individual and family evaluations for the State and whose report was part of the case plan and court report. The report suggested that a serious and uncommon maltreatment, either FDP or MBP, might be present and had only been made available to Sandra on October 30. The case plan and court report was received over objection.

Sandra then asked for an evidentiary hearing in order to present expert testimony to rebut the suggestion of this maltreatment. The court agreed that an evidentiary hearing could be scheduled in the future but emphasized that the disposition was being decided at the hearing of November 18, 1998. The court found that reasonable efforts had been made to avoid removing the children from the parental home and that it was not in the best interests of the children to return home. The court ordered that they be placed in the custody of DHHS. The case plan adopted by the court called for the grandparents to be made coguardians of the children by May 1999, with consistent and appropriate visitation for Sandra.

At the review hearing on September 24, 1999, the court adopted the June 15, 1999, case plan, which was almost identical to the first case plan. The court again found reasonable efforts had been made to avoid removing the children from their home but that the children should continue in the custody of DHHS.

In *In re Interest of Sarah K.*, 258 Neb. 52, 56, 601 N.W.2d 780, 783 (1999), we noted that we have previously held:

> [W]here an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed.

Citing *In re Interest of Joshua M. et al., supra.* We then determined that because the second order merely continued the terms of the earlier adopted case plan, an appeal from the latter order was a collateral attack on the former order and, thus, impermissible.

Likewise, in this case, the county court's order of November 18, 1998, was a final, appealable order. The court's September 24, 1999, order merely continued or extended the terms of the disposition order from the previous November. Both orders called for the children to be placed in the custody of DHHS, placement to remain with the grandparents, and appropriate visitation for Sandra. The only difference between the first case plan adopted at the November 1998 disposition hearing and the second case plan adopted at the review hearing the following September was an extended time period for the grandparents to become coguardians.

■ In the absence of a judgment or appealable order, an appellate court has no authority or jurisdiction to act, and in the absence of such judgment or order, the appeal will be dismissed. *In re Interest of Clifford M. et al.*, 258 Neb. 800, 606 N.W.2d 743 (2000). Because the September 24, 1999, juvenile order effects no change in Sandra's status or the plan to which Sandra was previously subjected, it was not a final order affecting a substantial parental right, and was not appealable. Thus, we dismiss the appeal in case No. S-99-1265.

GUARDIANSHIP PROCEEDINGS UNDER § 30-2608,
CASES NOS. S-99-1262, S-99-1263, AND S-99-1264

Sandra contends that the county court did not have jurisdiction to appoint coguardians for her children under § 30-2608 because the county court, sitting as a juvenile court, had already assumed jurisdiction.

■ Under the juvenile code, once a minor is adjudged to be within the definition of § 43-247(3), "[t]he juvenile court shall have exclusive original jurisdiction as to any juvenile," § 43-247, and as to "[t]he parent, guardian, or custodian who has custody of any juvenile described in this section," § 43-247(5).

"Notwithstanding any disposition entered by the juvenile court under the Nebraska Juvenile Code, the juvenile court's jurisdiction over any individual adjudged to be within the provisions of this section shall continue until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction." § 43-247. Finally, § 43-247(9) gives the juvenile court jurisdiction over "[t]he adoption or guardianship proceedings for a child over which the juvenile court already has jurisdiction under another provision of the Nebraska Juvenile Code."

The Nebraska Court of Appeals, in two separate cases, has considered the problem of guardianship appointments under § 30-2608 for adjudicated minors. In *In re Guardianship of Alice D. et al.*, 4 Neb. App. 726, 548 N.W.2d 18 (1996), the Court of Appeals concluded that Neb. Rev. Stat. § 43-285(1) (Reissue 1993) operated to effect a guardianship appointment, making a separate appointment under § 30-2608 unnecessary. Then, as now, § 43-285(1) (Reissue 1998) provides in part:

> When the court awards a juvenile to the care of [DHHS], an association, or an individual in accordance with the Nebraska Juvenile Code, the juvenile shall, unless otherwise ordered, become a ward and be subject to the guardianship of the department, association, or individual to whose care he or she is committed.

In addition, § 43-285(3) provides for a change in placement from what the court originally ordered:

> The department, association, or individual shall file a report and notice of placement change with the court and shall send copies of the notice to all interested parties at least seven days before the placement of the juvenile is changed from what the court originally considered to be a suitable family home or institution to some other custodial situation . . . .

■ Thus, pursuant to § 43-285(3), when a separate juvenile court or county court sitting as a juvenile court awards custody of a minor to DHHS, the court has authority to award custody to a family that DHHS has designated as suitable guardians without resorting to a proceeding under § 30-2608.

In *In re Guardianship of Alice D. et al., supra*, the Court of Appeals determined that when a juvenile has already been adjudged to be within the jurisdiction of the juvenile court, a guardianship proceeding under § 30-2608 would create the possibility of a separate guardian being appointed, with conflicting powers and duties to those assigned to DHHS under § 43-285(1).

The Court of Appeals also considered the possibility of the same individual or entity being awarded custody in a juvenile proceeding and appointed a guardian in a proceeding under § 30-2608. The Court of Appeals raised concerns that "such persons or entities could be subject to supervision by two separate courts concerning their responsibilities." 4 Neb. App. at 731, 548 N.W.2d at 22.

The Court of Appeals was not persuaded that these problems would be resolved in counties where the same judge presides over both the juvenile proceeding and the guardianship proceeding under § 30-2608:

> We realize that in most counties the county judge is also the juvenile judge, but this is not true in all counties. In addition, it appears quite possible that the children could be living in a different county when the guardianship proceeding would be attempted than the county the juveniles lived in at the time the juvenile proceeding was commenced. It is therefore possible that different county courts could have jurisdiction over the same juvenile.

*In re Guardianship of Alice D. et al.*, 4 Neb. App. 726, 731, 548 N.W.2d 18, 22 (1996). For these reasons, the Court of Appeals held that "when a minor has been adjudicated a juvenile as defined under § 42-247(3) and the juvenile court retains jurisdiction, a probate court cannot appoint a guardian of that juvenile without the consent of the juvenile court." 4 Neb. App. at 732, 548 N.W.2d at 22.

In *In re Guardianship of Alice D. et al., supra*, DHHS argued that the appointment of a guardian was a proper method of end-

ing the juvenile court's jurisdiction. The Court of Appeals concluded, however, that DHHS "should not be allowed to use the probate court as a means of ignoring the juvenile court, and we are confident that the Legislature did not intend for the probate court to interfere with the juvenile court's work." *Id.* at 733, 548 N.W.2d at 23.

In the present cases, the guardian ad litem argues that the case plan adopted by the juvenile court calling for guardianship with the grandparents constitutes the juvenile court's consent to the guardianship proceeding under § 30-2608. The Court of Appeals also addressed a situation in which the county court judge presided over both a juvenile adjudication and an appointment of guardians under § 30-2608 in *In re Interest of Justin C. et al.*, 7 Neb. App. 251, 581 N.W.2d 437 (1998).

In *In re Interest of Justin C. et al.*, the Court of Appeals held that the rule announced in *In re Guardianship of Alice D. et al., supra*, was applicable and that, therefore, the county court was without jurisdiction to appoint guardians even though the same judge presided in the juvenile proceedings. *In re Interest of Justin C. et al., supra*. The Court of Appeals noted the confusion caused in appellate review by the county court, sitting as a probate court, taking judicial notice of a body of proceedings from the juvenile case, "the breadth of which is unknowable on appeal and which technique has been criticized, especially in juvenile cases." *Id.* at 261, 581 N.W.2d at 443. In addition, the Court of Appeals was concerned by the inconsistent roles the guardian ad litem performed by appearing in both of these proceedings. *Id.*

We agree with the policy considerations raised by the Court of Appeals. We recognize that Neb. Rev. Stat. § 24-517 (Cum. Supp. 2000) was amended after these Court of Appeals cases to give concurrent jurisdiction to county courts and separate juvenile courts over guardianship proceedings. See § 24-517 ("[e]ach county court shall have . . . (2)[e]xclusive original jurisdiction in all matters relating to the guardianship of a person, except if a separate juvenile court already has jurisdiction over a child in need of a guardian, concurrent original jurisdiction with the separate juvenile court in such guardianship"). However, this amendment must be considered in the context of changes that were made to the juvenile code as part of the same bill.

The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *State ex rel. AMISUB v. Buckley, ante* p. 596, 618 N.W.2d 684 (2000); *Alegent Health Bergan Mercy Med. Ctr. v. Haworth, ante* p. 63, 615 N.W.2d 460 (2000).

We note that both §§ 24-517 and 43-247 were amended as part of L.B. 1041. Subsection (9) was added to § 43-247, which gives exclusive jurisdiction to juvenile courts for "[t]he adoption or guardianship proceedings for a child over which the juvenile court already has jurisdiction under another provision of the Nebraska Juvenile Code." See 1998 Neb. Laws, L.B. 1041.

Allowing county courts to preside over guardianship proceedings under § 30-2608 for adjudicated minors defeats the legislative intent of § 43-247(9). Nebraska case law had already recognized the exclusive jurisdiction of juvenile courts in guardianship proceedings even before these amendments. Before 1998, county courts had exclusive jurisdiction over guardianship matters under § 24-517. See § 24-517 (Reissue 1995). We nonetheless recognized that a county court, sitting as a juvenile court, has exclusive jurisdiction to appoint guardians for adjudicated minors. See *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996) (rejecting argument that exclusive jurisdiction of county court, sitting as juvenile court, denies noncustodial parent of any method through which to seek custody of adjudicated minor).

When legislation is enacted which makes related preexisting law applicable thereto, it is presumed that the Legislature acted with full knowledge of the preexisting law and judicial decisions of the Supreme Court construing and applying it. *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998). Thus, the statutory provision that county courts and separate juvenile courts have concurrent jurisdiction over guardianship matters reflects a legislative intent that a county court's jurisdiction will yield to the juvenile court's exclusive jurisdiction over a guardianship proceeding once a minor is adjudged to be within its jurisdiction.

In addition to the policy considerations raised by the Court of Appeals for upholding the juvenile court's exclusive jurisdiction, we note that a court must apply a different standard for a guardianship appointment under the juvenile code than the standard required under § 30-2608. Under § 30-2608, a court must find that the parent has lost custody rights due to unfitness or forfeiture before making a guardianship appointment.

Under the juvenile code, once a juvenile has been adjudged to be within the juvenile court's jurisdiction, the juvenile court, when entering a disposition order that places the juvenile outside of the home, must make a written determination that "continuation in the home would be contrary to the health, safety, or welfare of such juvenile *and* that reasonable efforts to preserve and reunify the family have been made if required under section 43-283.01." (Emphasis supplied.) Neb. Rev. Stat. § 43-284 (Reissue 1998).

The "fitness" standard applied in guardianship appointment under § 30-2608 is analogous to a juvenile court finding that it would be contrary to a juvenile's welfare to return home. See *In re Interest of Amber G. et al., supra* (applying fitness standard to disposition order under juvenile code to place children in custody of Department of Social Services). The second requirement under the juvenile code, however, potentially causes a conflict with concurrent county court jurisdiction. A juvenile court must also make an additional finding that reasonable efforts at reunification have been made.

Both the guardian ad litem in the guardianship petitions and the court in its orders state that Sandra had lost her parental right to custody by circumstances or prior court order under § 30-2608. Applying the § 30-2608 standard, however, permits a court to evade the juvenile code requirement that the court also find reasonable efforts at reunification have been made if required. See § 43-284. Neb. Rev. Stat. § 43-283.01(2) and (4) (Reissue 1998) require those efforts to be made unless there are aggravating circumstances. Thus, we conclude that when a minor is adjudged to be within the jurisdiction of the juvenile court, a guardianship appointment must be made pursuant to the juvenile code.

## CONCLUSION

In the juvenile case No. S-99-1265, we conclude that the September 24, 1999, order was not a final order affecting a substantial parental right and, thus, dismiss the appeal in that case. In cases Nos. S-99-1262, S-99-1263, and S-99-1264, we conclude that once there has been an adjudication under a juvenile proceeding, in either a separate juvenile court or a county court sitting as a juvenile court, guardianship proceedings must be brought in a juvenile proceeding and not under § 30-2608. Therefore, we vacate the decisions in the guardianship cases and dismiss the appeals.

JUDGMENTS IN NOS. S-99-1262, S-99-1263, AND
S-99-1264 VACATED, AND APPEALS DISMISSED.
APPEAL IN NO. S-99-1265 DISMISSED.