767 N.W.2d 127 (2009)
17 Neb. App. 595
In re Interest of TAYLA R., a child under 18 years of age.
State of Nebraska, appellee,
v.
Christina R., appellant.
In re Interest of Lea D. et al., children under 18 years of age.
State of Nebraska, appellee,
v.
Christina R., appellant.
Nos. A-08-1150, A-08-1151.
Court of Appeals of Nebraska.
May 12, 2009.
*130 David Kyker, Lincoln, for appellant.
Gary Lacey, Lancaster County Attorney, and Jeremy P. Lavene for appellee.
INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.
CASSEL, Judge.

I. INTRODUCTION
This appeal presents two juvenile cases which were consolidated for briefing and oral argument. In case No. A-08-1150, the juvenile court continued the out-of-home placement of a newborn child, pending adjudication, and we conclude that a preponderance of the evidence supports the court's order. In case No. A-08-1151, the review order appealed from continued the out-of-home placement of the three oldest children and changed the permanency goal from reunification to adoption, but contained a rehabilitation plan with the same terms from prior orders. We conclude that the order appealed from was not a final order because, taken as a whole, it merely continued a previous determination and did not affect a substantial right of the mother.

II. BACKGROUND
Christina R. is the mother of Lea D., born in October 1994; Charlie D., born in January 1997; Sierra R., born in November 2000; and Tayla R., born in September 2008.
On May 25, 2007, the court entered an ex parte order placing temporary custody of Lea, Charlie, and Sierra with the Nebraska Department of Health and Human Services (DHHS). On July 24, the court adjudicated Lea, Charlie, and Sierra. See Neb.Rev.Stat. § 43-247(3)(a) (Reissue 2008). The court found that the children lacked proper parental care by reason of the fault or habits of Christina or that the children were in a situation dangerous to life or limb or injurious to their health or morals because on May 4, Christina became involved in a theft by shoplifting while one or more of her children were with her and because between February 1 and May 19, Christina subjected one or more of the children to inappropriate discipline which resulted in "physical and/or emotional injury or pain." The court ordered that the temporary legal and physical custody of the children remain with DHHS for placement, treatment, and care.
On August 27, 2007, the court entered an order of disposition. The court found that reasonable efforts had been made to return legal custody of the children to Christina, but that returning legal custody to Christina would be contrary to the children's welfare because of the need to ensure the children's safety in Christina's care and because Christina was not able to demonstrate appropriate parenting skills and judgment, including nonabusive discipline. The court ordered that the children remain in the temporary legal custody of DHHS. The court ordered Christina to comply with a number of provisions. The court entered a similar order on October 10.
On January 11, 2008, the court entered an order of review. The court stated that *131 the primary permanency plan was for reunification, and it approved DHHS' plan as modified. On April 14, the court ordered that Christina's individual visitation with the children be changed from supervised parenting time to monitored parenting time. On May 2, the court entered an order of review, which identified reunification as the permanency plan.
A court report prepared on July 18, 2008, recommended adoption as the primary permanency plan for Lea, Charlie, and Sierra.
On September 16, 2008, Christina gave birth to Tayla. On September 17, the court entered an ex parte order regarding Tayla. The court found that Christina's other children had been removed from her care and that Christina had failed to correct the conditions which led to the children's removal and continued placement outside her care and which placed Tayla at risk of harm. The court ordered that DHHS have continued temporary custody and placement pending a placement hearing.
On September 18, 2008, the State filed a petition alleging that Tayla was a child defined by § 43-247(3)(a) because she lacked proper parental care by reason of the fault or habits of Christina or because the child was in a situation dangerous to life or limb or injurious to her health or morals. Specifically, the petition alleged that Christina's other children had been placed with DHHS for placement in a foster home. The petition alleged that a plan to correct the issues which led to the adjudication of Christina's other children had been adopted by the court, but that Christina had failed to correct the conditions that led to adjudication. Also on September 18, Christina filed motions for custody of Tayla and Sierra.
On September 22, 2008, the court held a review of disposition and permanency hearing regarding Lea, Charlie, and Sierra. Christina's counsel informed the court that he had filed motions for temporary physical custody of Tayla and Sierra and that there would likely be an overlap of evidence. The court and counsel agreed that testimony adduced at the hearing could be considered with regard to the motion concerning Tayla which was set for hearing on September 24. The court further heard evidence on September 30, and attorneys for the parties and the guardian ad litem agreed to consolidate the matters due to overlapping testimony.
Margaret Snyder, a licensed mental health practitioner and professional counselor, provided individual therapy for Christina and home-based family therapy for Christina and her children each Saturday. Snyder first met Christina in March 2007, and she has worked with Christina on parenting, management, and coping skills. Snyder also worked with Christina on dealing with feelings of depression, managing medication, and utilizing supports. Snyder believed that Christina had made progress in her parenting skills because Snyder saw Christina as being more consistent and structured in her interactions with the children.
Christina sees each child 2 days a week: once during the week for individual parenting time and then on Saturdays for family therapy. Initially, Christina's time with all of the children was supervised, but the individual visits had since moved from supervised to monitored visitation. Snyder testified that she recommended visitation be moved to monitored visitation because she felt that the children's behaviors had stabilized. Snyder testified that no concerns had been reported to her regarding the monitored visitation.
Snyder testified that the last family therapy session, which included Tayla, was *132 "okay" compared to past therapy sessions. But Snyder testified that there were some moments of conflict with the children, because Charlie wanted to hold Tayla, and Christina told him "no." Snyder testified that consistency had been a problem throughout her time with Christina: Things would go well for 3 or 4 weeks, then there would be 1 or 2 weeks where things were "kind of rocky," but then there would be structure again.
Snyder testified that she was supportive of Tayla's residing with Christina "[w]ith the condition that there be supportive services." Snyder testified that Christina had a crib, that her home was ready for a baby, and that Tayla's basic needs could be met. Snyder believed that Christina could keep both Sierra and Tayla safe at her home, and she hoped that Christina would cooperate with any services that would be provided to allow Tayla to come home. Snyder did not have concerns regarding a need for a transition period with Tayla, so long as there was some family support. Snyder had a concern regarding Christina's ability to nurture Tayla, and she explained that there is a distinction between being able to meet the basic needs of a child and nurturing the child.
Tesia Risk, who is employed through Region V in the integrated care coordination unit, is assigned to the children's cases. Risk testified that Lea, Charlie, and Sierra had been out of the home for over 15 months. Risk testified that Christina's boyfriend had sexually abused Lea, that Christina knew of the abuse, and that Christina did not do anything about it. Risk testified that DHHS' biggest concern was Christina's failure to protect the children. Risk testified that Tayla was removed from Christina's care at the hospital due to Christina's failure to complete the matters that her other three children were adjudicated on and due to Christina's lack of consistency over the last 6 months to 1 year.
Risk identified the lack of consistency as her concern. She testified that Christina had always said she was willing to be cooperative with services and service providers, but that she had not always done so. When asked if Christina cooperated with the family support services that Risk put in place, Risk answered, "I believe she cooperates and then there are times that she doesn't always follow the rules and things like that."
Risk did not disagree with placing Tayla in Christina's care, but Risk was concerned with Christina's prior lack of consistency and cooperation with services. Risk testified that she did not "necessarily feel that at this time I'm willing to take a chance of her not being consistent or cooperative with services when we're talking about a newborn child." To be supportive of Tayla's moving home, Risk testified that DHHS would need to see consistency and progress from Christina.
Risk testified that Christina has a "pretty good" support base and that numerous family members and friends attended a family group conference and were very vocal and supportive, stating that they would be there to assist Christina. Risk believed that services necessary for Tayla were community support services and things like the "WIC" nutrition program and food banks. She testified that DHHS would not necessarily have control over those services and that they would be things that Christina would need to access.
On October 3, 2008, the court entered an order of review concerning Lea, Charlie, and Sierra. The court found that reasonable efforts had been made to return physical custody of the children to Christina, but that the return of custody would be contrary to the children's best interests. The court found that the primary permanency *133 plan of adoption was supported by the evidence, and the court approved the plan. The court approved DHHS' rehabilitation plan and set the next hearing to review disposition for November 5.
On October 3, 2008, the court entered an order continuing temporary custody of Tayla with DHHS. The court found that reasonable efforts to prevent Tayla's continued removal from the parental home had been made in the form of services offered in connection with the other children's removal from Christina's care, including intensive family preservation, family support services, individual and family therapy, psychological and parenting assessments of Christina, and case management. The court found that return of legal custody to Christina would be contrary to Tayla's health, safety, and welfare due to Christina's lack of progress in services designated to assist her in having her other minor children returned to her care, Christina's impaired judgment and intellectual limitations which continue to impact her parenting, and her demonstrated inability to parent her children without full supervision and limitation of her visitation to one child at a time. The court found that Christina should have reasonable rights of supervised visitation a minimum of three times per week for a minimum of 3 hours per visit. On October 15, the court entered an order continuing the adjudication hearing to October 28.
On October 30, 2008, Christina filed a notice of appeal in each case, seeking to appeal from the respective orders entered on October 3.

III. ASSIGNMENTS OF ERROR
Christina assigns that the juvenile court erred in two respects. First, she alleges that the court erred by failing to return Sierra and Tayla to her care. Second, Christina contends that the court erred by changing the permanency goal to adoption even though she continued to make progress toward the goal of reunification.

IV. STANDARD OF REVIEW
[1] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. In re Interest of Taylor W., 276 Neb. 679, 757 N.W.2d 1 (2008).

V. ANALYSIS

1. JURISDICTION
[2, 3] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. In re Interest of Taylor W., supra. For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the tribunal from which the appeal is taken. In re Guardianship of Sophia M., 271 Neb. 133, 710 N.W.2d 312 (2006).
[4-6] The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. Id. A proceeding before a juvenile court is a "special proceeding" for appellate purposes. In re Interest of Walter W., 274 Neb. 859, 744 N.W.2d 55 (2008). Thus, the pertinent inquiry is whether the orders affect a substantial right of Christina. "[W]hether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order *134 and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed." In re Interest of R.G., 238 Neb. 405, 415, 470 N.W.2d 780, 788 (1991), disapproved on other grounds, O'Connor v. Kaufman, 255 Neb. 120, 582 N.W.2d 350 (1998).

(a) Case No. A-08-1150
[7, 8] Tayla has not been adjudicated, and the order appealed from continued Tayla's temporary custody with DHHS. A preadjudication order granting continued detention affects a parent's substantial right. See In re Interest of R.G., supra. We have jurisdiction because the order appealed from is a final order.

(b) Case No. A-08-1151
[9-12] In this case, the children were adjudicated in July 2007 and have been in out-of-home placements for over 15 months. Orders determining where a juvenile will be placed are dispositional in nature. In re Interest of Taylor W., supra. Dispositional orders are final and appealable. Id. The court has entered several review orders, which largely contained the same terms and from which Christina did not appeal. In juvenile cases, where an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed. In re Guardianship of Rebecca B. et al., 260 Neb. 922, 621 N.W.2d 289 (2000). Thus, a dispositional order which merely continues a previous determination is not an appealable order. In re Interest of Sarah K., 258 Neb. 52, 601 N.W.2d 780 (1999).
[13-15] Christina appeals from the October 3, 2008, order of review. The court found that reasonable efforts had been made to return custody of Lea, Charlie, and Sierra to Christina, but that such a return would be contrary to the children's best interests. The court had made similar findings in its May 2 order of review. Thus, the denial of the children's placement with Christina is not an appealable issue. However, the two orders contain different primary permanency plans. The May 2 order set forth a plan of reunification, whereas the October 3 order contains a permanency objective of adoption. To determine whether the order can be appealed in this case, it is necessary to consider the nature of the order and what parental rights, if any, the order affected. See, In re Guardianship of Rebecca B. et al., supra; In re Interest of Sarah K., supra.
In In re Interest of Sarah K., the Nebraska Supreme Court examined orders from October 22 and December 22, 1998. The October 22 order approved the case plan which provided for long-term foster care for the child, supervised visitation by the parents, and reunification as the goal. The December 22 order adopted the State's permanency plan of long-term foster care transitioning to independent living which provided for the possibility of reunification. On appeal, the Supreme Court stated that the terms of the December order "merely repeat the essential terms" of the October order, that "[t]here is nothing inconsistent with the December 22 order compared to the plan approved by the court in its October 22 order," and that "[t]he parents were not disadvantaged by the juvenile court's order of December 22, nor were their substantial rights changed or affected thereby." 258 Neb. at 58, 601 N.W.2d at 785. The court further stated that the December order "effects no change in the parents' status or the plan to which the parents and [child] were previously *135 subject." Id. at 59, 601 N.W.2d at 785.
In the instant case, the order from October 3, 2008, changed the permanency goal from reunification to adoption. Viewed in isolation, this modification appears to affect Christina's right to reunification with the children. Neb.Rev.Stat. § 43-283.01(3) (Reissue 2008) states:
If continuation of reasonable efforts to preserve and reunify the family is determined to be inconsistent with the permanency plan determined for the juvenile in accordance with a permanency hearing under section 43-1312, efforts shall be made to place the juvenile in a timely manner in accordance with the permanency plan and to complete whatever steps are necessary to finalize the permanent placement of the juvenile.
Reasonable efforts to reunify the family would be inconsistent with the permanency plan of adoption. However, it appears that the terms of the court's order have the effect of continuing reasonable efforts to preserve the family. The October 3 order approved, as modified, the rehabilitation plan of DHHS. Whether there is still a plan allowing Christina to rehabilitate herself or to take steps to reunite with the children is a pertinent inquiry. See In re Interest of Tabatha R., 255 Neb. 818, 587 N.W.2d 109 (1998). In In re Interest of Tabatha R., the Nebraska Supreme Court determined that an initial dispositional order which did not include a rehabilitation plan for the parents deprived them of any opportunity for reunification with their child and thus affected a substantial right.
In the case at hand, the October 3, 2008, order directed Christina to maintain a safe home environment for the children, to continue with weekly individual therapy sessions, to participate in family therapy, to have supervised/monitored visitation with each child, to cooperate with family support services, to continue seeing her psychiatrist, to not use physical discipline on the children, and to maintain legal means of support. These terms are the same as the terms contained in the May order. Even though the permanency objective changed from reunification, the order taken as a whole did not affect Christina's substantial rights. The court implemented a rehabilitation plan with the same services provided. Christina's visitation with the children did not change, nor did her status. The State has not filed a motion to terminate Christina's parental rights, and no adoption can occur until Christina's parental rights are actually terminated. Because the October order implicitly provides Christina with an opportunity for reunification by complying with the terms of the rehabilitation plan which terms have not changed from the previous order, we conclude that the October 3 order does not affect a substantial right. Accordingly, we dismiss the appeal in this case for lack of a final, appealable order.

2. FAILURE TO RETURN TAYLA TO CHRISTINA'S CUSTODY
[16, 17] Christina argues that the State failed to prove under Neb.Rev.Stat. § 43-254 (Reissue 2008) that placement at home would be contrary to Tayla's welfare. Section 43-254 states in pertinent part:
[T]he court may enter an order continuing detention or placement upon a written determination that continuation of the juvenile in his or her home would be contrary to the health, safety, or welfare of such juvenile and that reasonable efforts were made to preserve and reunify the family if required under subsections (1) through (4) of section 43-283.01.
The State must prove the requirements of § 43-254 by a preponderance of the evidence. *136 In re Interest of Borius H. et al., 251 Neb. 397, 558 N.W.2d 31 (1997).
The evidence did not establish either unconditional support or opposition to Tayla's being returned home to Christina. The testimony established that it was important for Tayla, who was approximately 2 weeks old, to bond with her mother. Snyder supported Tayla's residing with Christina "[w]ith the condition that there be supportive services" and the hope that Christina would cooperate with such services. Risk was concerned with Christina's prior lack of consistency and cooperation with services, especially where a newborn is involved. She testified that she did not disagree with returning Tayla home but that DHHS was not supportive of Tayla's being placed with Christina until Christina showed consistency with services. Risk explained that it was not realistic to put in services for Christina when Christina had not been cooperative with those services. Snyder testified that Christina's home was ready for a baby and that Tayla's basic needs could be met, but Snyder was concerned about Christina's ability to nurture Tayla. Risk testified that DHHS had concerns based on Christina's failure to protect her other children.
[18] The State needed to show only by a preponderance of the evidence that placement with Christina would be contrary to Tayla's health, safety, or welfare. Upon our de novo review, we conclude that burden has been met. There appears to be no dispute that Christina would need supportive services if Tayla were returned to her care, and the evidence shows that Christina has not consistently cooperated with services that have been put in place for her. There is no dispute that Christina expresses a willingness to comply. But the question before this court is whether she will, in fact, do what she says. When the evidence is in conflict, the appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. In re Interest of Tyler F., 276 Neb. 527, 755 N.W.2d 360 (2008). We do so in this case. Because the State proved by a preponderance of the evidence that Tayla's custody should continue to be withheld from Christina pending adjudication, we affirm the court's order.

VI. CONCLUSION
In case No. A-08-1150, we conclude that a preponderance of the evidence supports the court's order placing Tayla out-side of Christina's physical custody pending adjudication. We conclude that the order appealed from in case No. A-08-1151 is not a final order, and we dismiss the appeal for lack of jurisdiction.
JUDGMENT IN NO. A-08-1150 AFFIRMED.
APPEAL IN NO. A-08-1151 DISMISSED.