IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF AVERIE G. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF AVERIE G. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
CHRISTOPHER G., APPELLANT.

Filed July 30, 2013.    Nos. A-12-945 through A-12-947.

Appeal from the County Court for Scotts Bluff County: JAMES M. WORDEN, Judge. Appeal dismissed.

Todd Morten, of Island & Huff, P.C., L.L.O., for appellant.

Tiffany A. Wasserburger, Deputy Scotts Bluff County Attorney, for appellee.

David P. Broderick, of Douglas, Kelly, Ostdiek & Ossian, P.C., guardian ad litem.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

INBODY, Chief Judge.

## INTRODUCTION

Christopher G. appeals the decision of the Scotts Bluff County Court, sitting in its capacity as a juvenile court, adopting a case plan which changed the permanency goal for his minor children from adoption with a concurrent goal of reunification to a goal of adoption alone and in finding that reasonable efforts of reunification had been made by the State. He also appeals the court's denial of his application to proceed in forma pauperis on appeal.

## BACKGROUND

Christopher is the biological father of Serenity G., born in June 2006; Christopher G., Jr. (Christopher Jr.), born in April 2007; and Averie G., born in February 2009. On December 9, 2011, separate adjudication petitions were filed regarding Serenity and Averie, alleging that they

were children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). These petitions alleged that Serenity and Averie lacked parental care due to domestic violence between Christopher and the girls' biological mother, Jerah S. The petitions also alleged that Christopher and Jerah left the girls with a family friend, were out of contact for several days, and failed to give consent to treat the girls for medical issues. The petitions were amended to allege additional assertions that Christopher has a substantial criminal history, has been incarcerated repeatedly, was currently incarcerated, and was facing a number of additional criminal charges.

On January 19, 2012, the State filed a petition on behalf of Christopher Jr. after his legal guardian died. The petition stated the "guardianship ha[d] been disrupted" and alleged Christopher Jr. lacked parental care due to the facts that both parents have failed to provide any care or necessities for his care; that his parents have a history of domestic violence between them; that both parents had a history of substance abuse, including methamphetamine; and that both parents had been incarcerated. A supplemental petition added the allegations of a previous adjudication; of Christopher's current incarceration and his facing additional charges; and of a motion to terminate Christopher's parental rights as to Christopher Jr., which motion was later dismissed. The children were adjudicated as to Christopher on April 24, 2012, upon his admission of the allegations contained in the supplemental juvenile petitions.

At the May 22, 2012, dispositional hearing, the Department of Health and Human Services (DHHS) recommended a primary permanency goal of adoption. The county court adopted the May 2012 DHHS court report and case plan with the amendment of adding a concurrent plan of reunification, resulting in a permanency goal of adoption with a concurrent plan of reunification. The court noted that reasonable efforts were set forth in the court report and case plan. The court ordered all parties to comply with the terms of the case plan "including any Court ordered amendments." Custody of the minor children was placed with DHHS, and pursuant to the provisions of the case plan adopted by the court, visitation between Christopher and the minor children was to follow the recommendations of the children's therapist, Sara Klein, including recommendations as to setting, duration, and frequency. The court's order specifically provided that "part of the evaluation with the children and their therapist shall include the appropriateness of visitation with the father."

A permanency hearing was held on August 13, 2012. Among the exhibits admitted into evidence at the hearing was the August 2012 DHHS case plan, a report by the children's guardian ad litem, and a psychological evaluation of Christopher conducted by a certified clinical psychologist. The psychological evaluation, dated August 6, 2012, recommended that the court "exercise great caution in any attempt to return the children to their father"; described Christopher as "a poor fit" for the children's needs; and recommended that at a minimum, the court should expect Christopher to maintain stability in his living situation, relationships, work, and probation for an extended period of time, at least 1 or 2 years, prior to allowing unsupervised visits or placing the children with him. The children's caseworker recommended that Christopher needed to maintain his sobriety for at least 90 days before having a supervised visit with the children. Klein is Serenity's and Christopher Jr.'s therapist; Klein does not see Averie due to her young age. Klein testified that she had reviewed Christopher's psychological evaluation and that based on the evaluation and her visits with Serenity and Christopher Jr., in her opinion, it was not in the children's best interests to have contact with Christopher at that time as it would be more

of a disruption than a benefit. However, Klein testified that she was concerned with the recommendation of a 1-to-2-year waiting period before beginning visitation because she did not "feel it's in the best interests of the children to wait one to two years to be able to prove that, to begin having contact with [their] father." She did testify that she would like to see some stability from Christopher, even short-term, such as 90 days, prior to starting visitation.

The children's guardian ad litem noted in his August 2012 report to the court that at that time, Averie and Serenity had been out of the family home for 9 months, during which time Christopher had not seen them, that Christopher has never parented Christopher Jr. for a continuous period of time, and that if the court agreed with the certified clinical psychologist's recommendations concerning visitation, the case could be open for 21 to 33 months before Christopher would even be allowed to have unsupervised contact with his children.

On August 13, 2012, the county court adopted the August 2012 DHHS case plan and ordered that the permanency goal be changed from a goal of reunification with a concurrent goal of adoption to a goal of adoption only. Like the previous May 2012 case plan, the August 2012 case plan adopted by the court recommended that the establishment of visitation between Christopher and the minor children follow the recommendations of the children's therapist, Klein, and that the recommendations include setting, duration, and frequency of visits. The court's August 2012 order specifically provided that "[t]he previous order on visitation shall remain in force" and "[a]ll previous orders not in conflict with this order shall remain in full force and effect."

Christopher timely filed a notice of appeal and a request to proceed in forma pauperis with an accompanying affidavit. The county court found that Christopher had originally been declared indigent and had been appointed an attorney, but that Christopher had dismissed his court-appointed attorney and hired his own attorney. Therefore, the court found that Christopher had waived his right to proceed in forma pauperis and had not shown extraordinary circumstances which would preclude the enforcement of said waiver and denied his request. Christopher timely paid the statutory docket fee following the denial of his request for in forma pauperis status.

## ASSIGNMENTS OF ERROR

Christopher contends that the county court erred in denying his application to proceed in forma pauperis on appeal, in adopting the August 2012 case plan which changed the permanency goal from concurrent goals of adoption and reunification to a sole goal of adoption, and in finding that reasonable efforts were made to reunify the family.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Candice H.*, 284 Neb. 935, 824 N.W.2d 34 (2012).

ANALYSIS

*Denial of Request for In Forma Pauperis Status.*

First, we address Christopher's claim that the county court erred in denying his request to proceed in forma pauperis on appeal. After the denial of his request for such status, he had 30 days to appeal the ruling or proceed with the trial action by paying the docket fee. See, Neb. Rev. Stat. § 25-2301.02(1) (Reissue 2008); *Glass v. Kenney*, 268 Neb. 704, 687 N.W.2d 907 (2004); *Martin v. McGinn*, 265 Neb. 403, 657 N.W.2d 217 (2003). Instead of appealing the denial of his request for in forma pauperis status, Christopher paid the docket fee on September 24, 2012. Having chosen to pay the docket fee rather than appeal the denial of his request for in forma pauperis status, Christopher cannot now be heard to complain of this issue.

*August 2012 Case Plan.*

Christopher contends that the county court erred in adopting the August 2012 case plan which changed the permanency goal from concurrent goals of adoption and reunification to a sole goal of adoption. However, before we can reach the merits of Christopher's claim, we must first address a jurisdictional issue raised by the State. In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013); *In re Interest of Tayla R.*, 17 Neb. App. 595, 767 N.W.2d 127 (2009).

The State contends this court lacks jurisdiction over this appeal because Christopher has appealed from an order that was not a final, appealable order. The State claims that the order appealed from was not a final, appealable order for the reason that Christopher's substantial rights were not affected because the order continued the permanency objective of adoption and Christopher could still avail himself of services pending a trial on the termination of his parental rights.

For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the tribunal from which the appeal is taken. *In re Interest of Tayla R., supra*. The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. *In re Interest of Diana M. et al., supra*. We are considering whether the instant case falls under the second category listed above, i.e., whether the order appealed from was an order affecting a substantial right made during a special proceeding. There is no question that the order was made during a special proceeding as it is well established that a proceeding before a juvenile court is a special proceeding for appellate purposes. *Id.* Thus, we must determine whether the order affected a substantial right of Christopher. "'[W]hether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.'" *In re Interest of Diana M. et al.*, 20 Neb. App. at 478, 825 N.W.2d at 816, quoting *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). To determine whether the order

can be appealed, it is necessary to consider the nature of the order and what parental rights, if any, the order affected. *In re Interest of Diana M. et al., supra*; *In re Interest of Tayla R., supra*.

"'[A] judicial determination made following an adjudication in a special proceeding which affects the substantial rights of parents to raise their children is a final, appealable order.'" *In re Interest of Sarah K.*, 258 Neb. 52, 56, 601 N.W.2d 780, 783 (1999). However, in juvenile cases, where an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed. *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000); *In re Interest of Sarah K., supra*; *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013). Thus, a dispositional order which merely continues a previous determination is not an appealable order. *In re Interest of Sarah K., supra*; *In re Interest of Diana M. et al., supra*. For example, a dispositional order which merely continues a previous determination of where a child will be placed is not an appealable order. *In re Interest of Tayla R.*, 17 Neb. App. 595, 767 N.W.2d 127 (2009). Whether an order modifying a permanency plan is a final, appealable order is not always clear. *In re Interest of Diana M. et al., supra*.

There are several cases which have discussed whether a change in a permanency plan objective results in a final, appealable order. Most recently, in *In re Interest of Diana M. et al., supra*, this court held that the modification of a permanency plan objective from reunification to guardianship/adoption, coupled with an order to cease all reasonable efforts at reunification, affected the mother's right to reunification with the children and that thus, the order appealed from was a final, appealable order.

Conversely, in *In re Interest of Tayla R., supra*, the mother appealed from a review order continuing out-of-home placement for her three oldest children and changing the primary permanency plan goal from reunification to adoption, but containing a rehabilitation plan with the same terms from prior orders. In determining whether the change in the permanency goal from reunification to adoption affected a substantial right of the mother, a pertinent inquiry was whether there was still a plan allowing her to take steps to reunite with the children. *Id*. This court concluded that the order appealed from was not a final order, because even though the permanency objective was changed from reunification, the order, taken as a whole, did not affect the mother's substantial rights because the order appealed from contained the same terms contained in a prior order; the mother's status and visitation did not change; and the order implicitly provided the mother with an opportunity for reunification by complying with the terms of the rehabilitation plan, which terms had not changed from the previous order. *Id*.

Although not addressing a change in a permanency goal plan, several other cases are helpful in the analysis of whether an order has affected a substantial right of a parent. The Nebraska Supreme Court has determined that an initial dispositional order which did not include a rehabilitation plan for the parents deprived them of any opportunity for reunification with their child and, thus, affected a substantial right. *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998).

In contrast, the Supreme Court determined that an order which continued or extended the terms of a previous dispositional order which had called for the minor children to be placed in the custody of DHHS, with placement to remain with the grandparents and appropriate visitation

for the mother, did not affect the mother's substantial parental rights where the only difference in case plans was that the more recent case plan provided for an extended time period for the grandparents to become coguardians. *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000). Similarly, a juvenile court order adopting a permanency plan which provided for the possibility of reunification with the parents by providing that the minor child be placed in long-term foster care transitioning to independent living with supervised visitation with the parents, which order also found that termination proceedings should not be initiated against the parents, did not disadvantage the parents or affect the parents' substantial rights where the terms of the order appealed from merely repeated the essential terms of the previous juvenile court order; the order did not change the parents' status or the plan to which the parents and child were previously subject. *In re Interest of Sarah K.*, 258 Neb. 52, 601 N.W.2d 780 (1999).

Likewise, a juvenile court order referring a case to the State for the filing of a motion to terminate a mother's parental rights is not a final, appealable order because it does not affect a substantial right of the parent. *In re Interest of Anthony R. et al.*, 264 Neb. 699, 651 N.W.2d 231 (2002). Although such an order alters the procedural posture of the juvenile proceeding, it did not adjudicate or affect any substantial right of the mother. *Id.* "The filing of a petition to terminate parental rights, standing alone, does not affect any parental right." *Id.* at 706, 651 N.W.2d at 237.

With the foregoing precedent in mind, to determine whether the review order can be appealed in the instant case, we consider the nature of the court's August 2012 order, and what parental rights, if any, were affected by that order. Christopher has appealed from the court's August 2012 review order which modified the permanency goals for the minor children from reunification and adoption to adoption only. As set forth in our analysis above, the modification of the permanency goal, without more, is not enough to establish that a substantial right of Christopher has been affected. See *In re Interest of Tayla R.*, 17 Neb. App. 595, 767 N.W.2d 127 (2009) (order appealed from not final order, because even though permanency objective changed from reunification, order taken as whole did not affect mother's substantial rights). Thus, we look to whether the court's order, taken as a whole, affected Christopher's substantial rights.

In addition to the permanency change, Christopher also contends that the court's August 2012 order modified his visitation. He argues that the evidence presented at the August hearing, including his psychological evaluation, recommended that the court should expect him to maintain stability in his living situation, relationships, work, and probation for an extended period of time, at least 1 or 2 years, prior to allowing unsupervised visits or placing the children with him. However, despite the evidence presented at the hearing, neither the court's August 2012 order nor the August 2012 case plan which was adopted by the court includes the aforementioned recommendations regarding visitation. In fact, the court's August 2012 order provides just the opposite, i.e., that "[t]he previous order on visitation shall remain in force." The August 2012 order also continued the prior order on custody, and the outcomes and strategies relating to Christopher contained in the August 2012 case plan remained unchanged from the prior May 2012 case plan. Thus, the only difference between the August 2012 and the May 2012 case plans was the change in the permanency goal from concurrent goals of adoption and reunification to a sole goal of adoption.

Since the sole change in the August 2012 order was the change in the permanency objective from reunification and adoption to adoption only, with no other changes, the order merely continued a previous determination and did not affect a substantial right of Christopher. As such, the order appealed from was not a final, appealable order.

*Reasonable Efforts.*

Having found that the order appealed from was not a final, appealable order, Christopher's claim that the county court erred in finding that reasonable efforts were made to reunify the family is not properly before this court.

## CONCLUSION

We conclude that Christopher has waived the issue of the denial of his request for in forma pauperis status by choosing to pay the docket fee rather than appeal the denial of his request for such status. We further conclude that the court's August 2012 order is not a final, appealable order because it did not affect a substantial right of Christopher. Therefore, this appeal is dismissed for lack of jurisdiction.

APPEAL DISMISSED.