IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF JOSHUA C. & BRENDEN C.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF JOSHUA C. AND BRENDEN C., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
AMBER C., APPELLANT, AND BARBARA C. AND RAY C., INTERVENORS-APPELLEES.

Filed November 5, 2013.    No. A-13-296.

Appeal from the Separate Juvenile Court of Douglas County: DOUGLAS F. JOHNSON, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Joy M. Suder for appellant.

Donald W. Kleine, Douglas County Attorney, Amy Schuchman, Jennifer C. Clark, and Mary C. Stiles, Senior Certified Law Student, for appellee.

Lynnette Z. Boyle, of Tietjen, Simon & Boyle, guardian ad litem.

MOORE, PIRTLE, and BISHOP, Judges.

MOORE, Judge.

Amber C. appeals from an order of the Douglas County Separate Juvenile Court changing the permanency plan objective for her two children from reunification to adoption and determining that no further reasonable efforts toward reunification are necessary. For the reasons that follow, we conclude that the juvenile court did not err when concluding that reasonable efforts toward reunification had been made and that further reasonable efforts were no longer necessary. We also conclude that the juvenile court did not err when it changed the permanency objective from reunification to adoption. We affirm.

- 1 -

FACTUAL BACKGROUND

Amber is the mother of Brenden C., born in February 2005, and Joshua C., born in December 2006. On April 26, 2010, Brenden and Joshua were removed from Amber's care after she tested positive for methamphetamines and benzodiazepines. On April 27, the State filed a petition alleging that Brenden and Joshua lacked proper parental care due to Amber's faults and habits and were children within the purview of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). The State asserted that Amber's drug use exposed the boys to harm. The State also filed a motion for temporary custody of Brenden and Joshua. On the same day, the juvenile court entered an order for immediate custody, placing the children with the Nebraska Department of Health and Human Services (DHHS).

Since their removal from Amber's care, Brenden and Joshua have been continuously placed with their paternal grandparents, Barbara C. and Ray C., who intervened in the matter. At the July 30, 2010, adjudication hearing, the juvenile court found that Brenden and Joshua were children within the meaning of § 43-247(3)(a). Following the hearing, the boys remained in foster care with their grandparents.

The State filed supplemental petitions relating to Brenden and Joshua's father, Bryan C., and the children were adjudicated on these petitions. We have not included further information about Bryan as he is not a party to this appeal, except as it relates to Amber.

Following the adjudication hearing, the juvenile court held a number of review and permanency planning hearings. After the initial disposition and permanency planning hearings, the court adopted a permanency plan of reunification with a concurrent plan of adoption. The court noted that these initial permanency plans were due to Amber's lack of initial participation in services. When Amber began to utilize the services, the court maintained reunification as the sole permanency plan. After a May 10, 2012, hearing, the reunification plan was altered to include a concurrent plan of adoption along with the reunification goal.

Amber has been offered a variety of services during the pendency of this case. These services have included supervised visitation, transportation, psychological and psychiatric evaluations, child care, medical and dental care, family support, individual therapy, a chemical dependency evaluation, chemical dependency treatment, drug screening, and bus passes. Initial case reports indicated that Amber had been making progress with these services and regularly attended visits with her children. Because of this progress, Amber's visits with Brenden and Joshua became semisupervised.

On November 6, 2012, Brenden and Joshua's guardian ad litem filed a motion asking for the rescheduling of a review and permanency planning hearing as an evidentiary hearing. The evidentiary hearing was held on November 8, 2012, and on January 14, February 15, and March 14, 2013. During the March 14 hearing, Jacquelyn Thirlkel, the current case manager, testified to her experiences working with Amber and Bryan. Thirlkel has worked with Amber and Bryan on two separate occasions--in 2011 and again beginning on December 1, 2012.

During her testimony, Thirlkel expressed her concerns about the status of the case. After she resumed control of the case, she was concerned about whether services were being provided to the family due to a lack of documentation in the case file. Thirlkel attempted to schedule a home visit with Amber and Bryan, but they were unwilling to schedule a visit. Amber and Bryan

also canceled a scheduled home visit just before it was to occur. In general, Thirlkel reported that she has great difficulty contacting Amber. Thirlkel also testified to substantial difficulties in obtaining drug tests and signed releases for medical records from Amber, which we discuss in more detail below.

Thirlkel testified to her personal meetings with Brenden and Joshua. The boys reported that Amber allowed Bryan to be present at her visits despite having been ordered to have separate visits. These violations caused Thirlkel to recommend that Amber's visitation revert back to supervised visits. The boys also informed her that Amber and Bryan would argue with each other and use vulgar language during the visits. Brenden also reported that Amber had hit him on the back during the semisupervised visits when she became angry with him. Thirlkel testified that in February 2013, Amber became increasingly inconsistent in attending these visits.

On the final date of the hearing, March 14, 2013, Thirlkel reported that Amber had revealed that she had relapsed to drug use on three occasions. However, Amber would not reveal which substances she had taken. Thirlkel also testified that Amber was no longer attending Alcoholics Anonymous or Narcotics Anonymous meetings, that Amber and Bryan were not attending couples counseling, and that Amber and Bryan were in the process of moving from their apartment without any definite subsequent housing. Thirlkel's case plan and court report were admitted as evidence. The case plan recommended reunification as the permanency objective and set goals for Amber.

Following the hearing, the juvenile court entered an order on March 15, 2013. The court determined that reasonable efforts toward reunification had been made and that further reasonable efforts were not appropriate because of the length of time the case had been pending and the children's need for permanency. The court also changed the permanency objective from reunification to adoption and ordered that Amber and Bryan be offered relinquishment counseling. Amber appeals from this order.

## ASSIGNMENTS OF ERROR

Amber assigns that the juvenile court erred by finding (1) that the State had made reasonable efforts to reunify her with Brenden and Joshua, and further reasonable efforts were no longer necessary, and (2) that it was in the children's best interests to change the permanency objective from reunification to adoption.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Aaliyah M. et al.*, 21 Neb. App. 63, 837 N.W.2d 98 (2013).

## ANALYSIS

*Jurisdiction.*

Amber appeals the juvenile court's order which changed the permanency plan for Brenden and Joshua from reunification to adoption. This appeal raises a question regarding this court's jurisdiction.

In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of the appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by a tribunal from which the appeal is taken. *Id.*

The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012). Juvenile court proceedings are considered special proceedings. *Id.* Thus, we must decide whether the juvenile court's order changing the permanency plan to adoption affected one of Amber's substantial rights.

A substantial right is an essential legal right, not a mere technical right. *Id.* Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. *In re Interest of Diana M. et al., supra.*

However, in juvenile cases, where an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed. *In re Interest of Tayla R.*, 17 Neb. App. 595, 767 N.W.2d 127 (2009). In other words, an order which merely continues a previous determination of the juvenile court is not an appealable order. See *In re Interest of Diana M. et al., supra.*

Whether an order merely continues a previous juvenile court determination is not always clear. This includes cases where the permanency objective is changed from reunification to adoption. For example, in *In re Interest of Tayla R., supra*, this court found that a juvenile court order which changed the permanency plan from reunification to adoption was not appealable because it did not affect the substantial rights of the mother. The new order implemented a rehabilitation plan that contained the same services as the previous order, did not change the mother's visitation or status, and implicitly provided the mother an opportunity for reunification by complying with the terms of the rehabilitation plan. *Id.*

However, in *In re Interest of Diana M. et al., supra*, we found the juvenile court's modification of a permanency goal from reunification to guardianship/adoption to be appealable. We noted that this order was distinguishable from *In re Interest of Tayla R., supra*, because the order also ceased all reasonable efforts, affecting the mother's right to reunification with her children. *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013).

In the present case, the State and the children's guardian ad litem argue that the juvenile court's March 15, 2013, order is a continuation of previous orders. They also argue that the order leaves an opportunity for Amber to reunite with her children. We disagree. The juvenile court's order specifically changes the permanency objective to adoption. Although adoption was previously a concurrent plan with reunification, the new order eliminates reunification as a plan and, as such, is not merely a continuation of previous orders. See *id.* The order further finds that all reasonable efforts for reunification should cease and that there is no compelling reason to give further time for rehabilitation. The court also ordered relinquishment counseling for Amber.

These changes clearly affect Amber's substantial rights as a parent and do not allow for an opportunity for reunification. See *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998) (initial dispositional order which does not include rehabilitation plan for parents deprived them of opportunity for reunification and affected substantial right). Therefore, we determine that the March 13, 2013, order is a final, appealable order and proceed to address Amber's assignments of error.

*Reasonable Efforts at Reunification.*

Amber argues that the juvenile court erred in finding that reasonable efforts had been made to reunify her with Brenden and Joshua. Amber claims that she has not received sufficient assistance from the State despite having been "willing and eager" to take advantage of services. Brief for appellant at 13. Amber further argues that the juvenile court erred in finding that no further efforts toward reunification are necessary.

Neb. Rev. Stat. § 43-283.01(2) (Cum. Supp. 2012) requires the State to make reasonable efforts to preserve and reunify the family. When determining whether reasonable efforts have been made to preserve and reunify the family and in making such reasonable efforts, the child's health and safety are the paramount concern. § 43-283.01(1).

Despite Amber's claims to the contrary, we find that the State has made substantial efforts aimed at reunification throughout the case. These efforts have included visitation, transportation, psychological and psychiatric evaluations, individual therapy, parenting classes, chemical dependency treatments, drug screening, bus passes, transitional housing, and a referral for couple therapy. The problem in this case is that Amber has not adequately utilized the offered services.

Amber has attended the majority of the scheduled visits with her children and clearly cares for her children, but she has not made consistent efforts in other areas. Amber has been reluctant to allow the case manager to conduct a home visit, has stopped attending Alcoholics Anonymous and Narcotics Anonymous meetings, and has been discharged from family therapy due to lack of attendance and failure to follow the therapists' advice. Drug testing is also a major concern in this case. At the evidentiary hearing, Thirlkel testified to the difficulties drug test administrators have experienced in attempting to administer Amber's drug tests. Oftentimes, Amber would not respond to telephone calls attempting to schedule tests and has even declined to submit to a test when an administrator met her at the courthouse. Amber also admitted to Thirlkel that she had relapsed, but refused to disclose what substance she had taken and would not submit to a drug test. Amber's inconsistency in submitting to these tests has led the agency to discontinue its efforts in this case.

After our review of the record, we find sufficient evidence to support the juvenile court's finding that reasonable efforts have been provided to Amber during this case. Further, the fact that Amber has been inconsistently participating in these services after the 3-year lifespan of this case justifies the juvenile court's decision to cease reasonable efforts. This assigned error is without merit.

*Change of Permanency Objective From*
*Reunification to Adoption.*

In her second assignment of error, Amber alleges that the juvenile court erred when it determined that the children's best interests required changing the permanency objective from reunification to adoption. Amber claims that there was insufficient evidence in the record to support this change. She contends that she continues to progress toward reunification.

The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests, and the code must be construed to assure the rights of all juveniles to care and protection. *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013).

As noted above, this case has been pending for approximately 3 years. During this time, Brenden and Joshua have been placed outside the home with their grandparents and have had only supervised or semisupervised visitation with Amber. These visits have recently become inconsistent. Additionally, Amber has admitted to recently relapsing to drug use on three occasions, but she would not disclose what substances she had used. Finally, Amber has not been able to obtain stable housing during the pendency of this case. As of the final day of the evidentiary hearing, Thirlkel testified that Amber had informed her that she and Bryan were in the process of moving but did not have a specific destination.

The record in this case reveals a lack of progress toward reunification. Brenden and Joshua need stability in their lives after 3 years in foster care with their grandparents. Children should not be suspended in foster care or be made to await uncertain parental maturity. See *In re Interest of Emerald C. et al.*, 19 Neb. App. 608, 810 N.W.2d 750 (2012). Upon our de novo review, we find that the juvenile court correctly determined that the permanency objective should be changed from reunification to adoption.

## CONCLUSION

The juvenile court did not err when it determined that reasonable efforts toward reunification had been made and that further efforts were not necessary. Further, the court did not err when it changed the permanency objective from reunification to adoption.

AFFIRMED.