IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF SOLIANA V.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF SOLIANA V., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CESAR V., APPELLANT.

Filed October 31, 2017.    No. A-16-998.

Appeal from the County Court for Deuel County: RANDIN ROLAND, Judge. Affirmed.

Michael D. Samuelson, of Reynolds, Korth & Samuelson, P.C., L.L.O., for appellant.

Joel B. Jay, Deuel County Attorney, for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Cesar V., biological father of Soliana V., appeals from the order entered by the County Court for Deuel County, sitting as a juvenile court, which changed the permanency objective from reunification with an alternate plan of adoption to a primary plan of adoption. Finding no error, we affirm.

## BACKGROUND

Cesar and Shantel E. are the parents of Soliana, who was born in July 2013. Cesar and Shantel are not married. On June 2, 2015, a petition was filed pursuant to Neb. Rev. Stat.

- 1 -

§ 43-247(3)(a) (Cum. Supp. 2014), alleging that Soliana is in a situation injurious to her health or morals. The petition listed Shantel as the mother and the father's information unknown. A motion for ex parte order of temporary custody was filed the same day. The supporting affidavit states that law enforcement was contacted by an anonymous caller who advised that Shantel was smoking crack in a glass pipe on the front step of her mother's house and was threatening to kill her small child (not quite 24 months old). Shantel, who was on probation in Colorado, was found in possession of methamphetamine and was arrested. On June 3, the county court entered an order granting the Department of Health and Human Services temporary custody of Soliana with out-of-home placement. Following a hearing on June 5, the court entered an order to continue temporary custody in the Department with foster home placement in the home of the maternal grandmother. On June 29, an order was entered changing the foster placement to the home of Jennifer and Jay L., where Soliana has remained throughout the pendency of this case.

On July 28, 2015, an amended petition was filed, alleging that Soliana was a child within the meaning of § 43-247(3)(a) for the reason that she is juvenile who is without proper parental care through no fault of her mother. The amended petition alleged that the father is unknown. On July 28, the court entered an order of adjudication upon the admission of Shantel to the allegations of the amended petition, maintained custody with the Department, and awarded reasonable visitation to be determined by the Department. On August 4, an order of disposition was entered, adopting the Department's case plan and court report.

A permanency hearing was held on November 19, 2015, and in an order entered on that date, the court found that the permanency goal was reunification (with a target date of 5/12/16), with an alternative plan of adoption. This order identified Cesar as the father. On February 12, 2016, the permanency goal remained reunification but the target date was extended to July 8. The alternate plan remained adoption. On April 19, the court entered an order again extending the target date of reunification to December 15. In addition, the court ordered that Cesar participate in and complete anger management classes/counseling, made provisions for Cesar's transportation from Colorado to Nebraska, ordered Shantel to complete a substance abuse evaluation as soon as possible and follow all recommendations, and made provisions for in-person and telephone/Skype visitation by the parents. Additional review hearings were held and orders entered on May 24 and July 21 which continued the same permanency goals.

On October 3, 2016, another review hearing was held and an order entered which changed the permanency goal to adoption. The evidence adduced at this hearing, as it relates to Cesar, shows that at the time that Shantel was arrested and Soliana was removed from her home, Cesar was incarcerated and in a halfway house in Sterling, Colorado. When he was eventually located, Cesar sought to obtain permission from his parole officer in Colorado to travel to Nebraska on a regularly scheduled basis to visit Soliana. The approval (for every other week) was not received until mid-January 2016. The Department initially arranged for transportation for every other week, indicating that if Cesar was consistent with visits, it would then approve an increase to every week if such was authorized by his parole officer. Cesar was not able to exercise his first visit scheduled for February 1 due to a snowstorm. His first visit was held on February 8. The next two visits did not occur as a result of the transportation company not being able to contact Cesar by telephone (despite being advised of his new telephone number). The next visit scheduled for March 14 did

not occur as a result of Cesar's arrest for criminal mischief (which charges were ultimately dismissed in July). Visits did not resume until April 18, and in May, Cesar was authorized and able to visit one day a week, which weekly visits continued on a regular basis through July. However, Cesar tested positive for cocaine, methamphetamine, and THC on a few occasions between June and September. This led to further travel restrictions placed upon Cesar by his parole officer. Thereafter, Cesar only had one visit with Soliana in the months of August and September. Cesar also was able to have weekly telephone visits with Soliana.

Department workers testified about the plan for reunification relating to Cesar. Initially, the main goals were to reestablish the relationship between Cesar and Soliana, along with ensuring that he was following through with his parole requirements, and obtaining safe and stable housing. Due to travel restrictions, it was first necessary to obtain consent from Cesar's parole officer for Cesar to travel from Colorado to Nebraska to visit Soliana, which did not occur until late January 2016. Miscommunication with the transportation company was initially a barrier to some of the visits that Cesar was scheduled to have.

Cesar has not obtained stable housing; he has moved several times throughout the duration of the case. Cesar was not employed at the time of the hearing. The Department did not receive documentation that Cesar completed the court-ordered anger management class. Cesar did not provide a financial plan of how he could provide for Soliana's basic needs. Cesar has not followed the conditions of his parole due to his positive drug tests. A Department supervisor testified that she believed that there has not been reasonable progress by Cesar toward the goal of reunification.

The visitation supervisor involved in the case until July 2016 testified that she supervised 16 visits between Cesar and Soliana. The visits were typically set up from 9 a.m. to 3 p.m. This worker described good interaction between Cesar and Soliana; they "loved each other," "they were very excited about seeing each other," Cesar was "very sensitive to Soliana." The worker testified about the activities they engaged in and about Cesar's care of Soliana. The worker had no concerns as far as safety for Soliana while around Cesar. This worker acknowledged that Cesar did not have stable employment or housing during this time, which was an issue in the case.

A subsequent visitation supervisor testified about the one and only visit that she supervised between Cesar and Soliana, which occurred on September 7, 2016. The worker had reviewed documents regarding prior visits which indicated that there had been good interaction between Cesar and Soliana and that Cesar had been calm. At the September 7 visit, the worker testified that Cesar appeared agitated. At the beginning of the visit, Soliana ran to Cesar and there was good attachment between the two. But as the visit went on, Cesar became very agitated and was very impatient with Soliana. Cesar threatened to leave a couple of times if Soliana didn't listen or answer his questions. Soliana then became very introverted; "she slumped, kept her head down, she would whimper." Cesar told the worker that he had gotten "blazed" prior to the visit to indicate that he was high and said that he wanted to stay high throughout the visit. He expressed frustration with the Department and threatened to "slit everybody's throats" if they took his daughter. On a walk outside, Cesar appeared to pull a knife from his pocket and threaten a person whose dog was in a yard they had passed by.

Cesar testified that he believed reunification with him would be in Soliana's best interests. He acknowledged that he has had difficulty finding stable employment and housing as a result of

being a convicted felon, and that he had experienced some positive drug tests. He does not have his own vehicle for transportation. At the time of the hearing, Cesar was living in a halfway house and attending a three-month treatment program for his drug addiction. His statutory release date from parole is February 2017.

At the conclusion of the October 3, 2016 hearing, and in its written order, the court changed the permanency plan to adoption and scheduled another hearing for October 20 for a first appearance on a supplemental petition for termination of parental rights. Cesar timely appealed from that order and Shantel filed a second notice of appeal, however, she did not file a brief on appeal.

ASSIGNMENT OF ERROR

Cesar assigns that the juvenile court erred in changing the permanency goal to adoption, asserting that the State failed to establish reasonable efforts to reunify Soliana with Cesar and failed to establish that changing the permanency objective was in Soliana's best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Carmelo G.*, 296 Neb. 805, 896 N.W.2d 902 (2017).

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *In re Interest of Becka P.*, 296 Neb. 365, 894 N.W.2d 247 (2017).

ANALYSIS

*Jurisdiction.*

In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Id*. For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by a tribunal from which the appeal is taken. *Id*.

The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012). Juvenile court proceedings are considered special proceedings. *Id*. Thus, we must decide whether the juvenile court's order changing the permanency plan to adoption affected a substantial right. We conclude it did.

A substantial right is an essential legal right, not a mere technical right. *Id*. Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. *In re Interest of Octavio B. et al.*, 290 Neb. 489, 861 N.W.2d 415 (2015)

In *In re Interest of Tayla R.* 17 Neb. App. 595, 767 N.W.2d 127 (2009), this court determined that a review order which changed the permanency plan goal from reunification to

adoption did not affect a substantial right because the order implemented a rehabilitation plan that contained the same services as the previous order, did not change the mother's visitation status, and implicitly provided the mother an opportunity for reunification by complying with the terms of the rehabilitation plan. However, in *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013), we found the juvenile court's modification of a permanency goal from reunification to guardianship/adoption to be appealable because the order also ceased all reasonable efforts, affecting the mother's right to reunification. Similarly, the Nebraska Supreme Court in *In re Interest of Octavio B., supra*, found that an order changing the permanency goal from reunification to adoption did affect a substantial right as the record indicated that the mother would not be given further opportunity for compliance with the case plan.

In this case, although the order changing the permanency goal did not explicitly cease all reasonable efforts, the record from the hearing on October 3, 2016 does show that the court found reasonable efforts toward reunification had been made which were unsuccessful. The record does not indicate that Cesar was given further opportunity to comply with the case plan for reunification. The court scheduled a first hearing on a supplemental petition for termination of parental rights (presumably to be filed by the State) for later in October. We determine that the October 3 order affected a substantial right of Cesar and is therefore a final appealable order.

*Reasonable Efforts/Change in Permanency Plan.*

Cesar argues that the evidence did not demonstrate that reasonable efforts had been made to reunify Soliana with him and the juvenile court's decision to change the permanency objective to adoption was not supported by the evidence. Cesar also argues that the State failed to present sufficient evidence to show that changing the permanency objection to adoption was in the best interests of Soliana.

Neb. Rev. Stat. § 43-283.01(2) (Reissue 2016) requires the State to make reasonable efforts to preserve and reunify families to make it possible for a juvenile to safety return to the juvenile's home. When determining whether reasonable efforts have been made to preserve and reunify the family and in making such reasonable efforts, the child's health and safety are the paramount concern. § 43-283.01(1). Reasonable efforts to place a juvenile for adoption or with a guardian may be made concurrently with reasonable efforts to preserve and reunify the family, but priority shall be given to preserving and reunifying the family. § 43-283.01(6).

At the conclusion of the October 3, 2016 hearing, the trial judge noted the reasonable efforts toward reunification that had been made in the case, including having referred the parents to mediation and having twice postponed the target date for reunification in order to give the parents additional time to rehabilitate themselves. With respect to Cesar, the court noted that he has repeatedly tested positive for drugs while on parole and now finds himself in a halfway house in a three-month program. The court concluded that the parents have chosen not to take advantage of the services provided and "have continued on their own ways." The court changed the permanency plan to a primary plan of adoption and scheduled the case for a first hearing on a supplemental petition to terminate parental rights.

Upon our de novo review, we conclude that the juvenile court did not err in finding that reasonable efforts had been given to Cesar and in changing the permanency goal from one of

reunification with an alternate plan of adoption to a primary goal of adoption. At the time of the hearing on October 3, 2016, Soliana, who was a little over 3 years old, had been in out-of-home placement for approximately 16 months. While the record before us does not provide information on Cesar's relationship with Soliana before she was removed from her mother's home, we do know that at the time of removal, Cesar was incarcerated or on parole in Colorado. Since this case was instituted, Cesar has been provided services by the Department in the form of visitation, transportation services, mediation, and team meetings. Cesar has been able to exercise visitation, however, it appears that this visitation was hampered due to his drug use. Cesar is not in a position to be reunited with Soliana as he does not have stable employment, housing, or transportation. Commendably, Cesar is making efforts to address his drug addiction. However, the record does not indicate that Cesar will be in a position to care for Soliana any time in the near future.

Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016). We affirm the juvenile court's finding that reasonable efforts had been afforded Cesar and changing the permanency objective to adoption.

## CONCLUSION

The juvenile court did not err in finding that reasonable efforts had been afforded Cesar and in changing the permanency objective from reunification with an alternate plan of adoption to a primary objective of adoption.

AFFIRMED.